## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CANDACE BEVERLY, et al.           :
                                      :
                                      :
      v.                             :    Civil No. CCB-12-1599
                                        :
                                      :
VITRAN EXPRESS, INC.          :
                                        :
                                      :

## MEMORANDUM

The plaintiffs in this case, Candace Beverly and Frances Mitchell, co-personal representatives of the estate of Michael Nemes; Adrianna Nemes; and Richard S. Nemes, Jr. (collectively, "plaintiffs"), brought this action against Defendant Vitran Express, Inc. ("Vitran"). Plaintiffs assert claims for wrongful death, survival, and punitive damages arising from a motor vehicle accident in which a tractor-trailer driven by Vitran's employee struck Michael Nemes's car, resulting in his death. Now pending before the court is Vitran's motion to dismiss or for partial summary judgment on the issue of punitive damages. (ECF No. 22.) For the reasons stated below, Vitran's motion will be granted.

## BACKGROUND

On October 22, 2011, in the early morning hours, Bruce John Beattie, a truck driver for Vitran Express, Inc., was operating Vitran's 18-wheel commercial tractor-trailer in an easterly direction along Interstate 70 in Maryland.  (ECF No. 20, Am. Comp. ¶ 14.) At approximately 2:17 a.m., as two passenger vehicles were approaching eastbound, Beattie attempted to make an illegal U-turn across multiple lanes of Interstate 70 while speaking with one or more Vitran

representatives on his mobile phone.  (*Id.* at ¶¶ 16-17.) The driver of the first vehicle, the

plaintiffs' decedent, Michael K. Nemes, attempted to avoid impact with the tractor-trailer. (*Id.* at

¶¶ 17, 19.) Nemes was unable to avoid the impact, and the left rear corner of the trailer entered

the driver's side of the passenger compartment of Nemes's vehicle. (*Id.*) As a result of the

accident, Nemes suffered severe injuries that led to his death. (*Id.* at ¶ 29.)

The plaintiffs brought suit on or about March 2, 2012, in the Court of Common Pleas of

Philadelphia County, Pennsylvania.  Their complaint alleged wrongful death and survival act

claims. On March 26, 2012, Vitran removed the action to U.S. District Court for the Eastern

District of Pennsylvania, and the next day Vitran filed for a change of venue.  The District Court

for the Eastern District of Pennsylvania entered an order transferring the case to this court on

April 30, 2012. On June 13, 2012, the plaintiffs filed an amended complaint, asserting three

counts: (I) wrongful death; (II) survival; and (III) punitive damages. Vitran filed a motion to

dismiss or for partial summary judgment as to the punitive damages claim on June 29, 2012.

## ANALYSIS

### *Motion to Dismiss Standard*

The court finds that this issue can be resolved on the pleadings and will therefore regard

Vitran's motion as a motion to dismiss. "The purpose of a Rule 12(b)(6) motion is to test the

sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim,

or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.

2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*,

178 F.3d 231, 242 (4th Cir. 1999)).  When ruling on such a motion, the court "must accept the

well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences

derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotations marks and alterations omitted).  It is not sufficient that the well-pleaded facts create "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.* at 1949 (internal quotations and citation omitted).

***Choice of Law Analysis***

Vitran has brought this motion to dismiss and/or for partial summary judgment on the plaintiffs' claims for punitive damages, arguing that there is no genuine issue of material fact and that Vitran is entitled to judgment as a matter of law on this issue.  Vitran asserts that Maryland law prohibiting punitive damages unless the defendant acted with "actual malice" applies to this

case.  The plaintiffs respond that this court should apply Pennsylvania's lower "reckless indifference" standard for punitive damage awards.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). When a case is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court conducting a choice-of-law analysis must apply the law of the transferor court. *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990).

Assuming that an "actual" conflict exists between the different states' laws, *see Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007), the first step in a choice of law analysis under Pennsylvania law is an "'interest analysis' of the policies of all interested states." *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005) (citing *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996); *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 & n. 15 (3d Cir. 1991)). Then, based on the result of that analysis, the court must characterize the case as a true conflict, false conflict, or unprovided-for case. *Id.* A true conflict exists if the "'governmental interests of [*both*] jurisdictions would be impaired if their law were not applied.'" *Id.* (internal citations omitted). If, on the other hand, "'only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law,'" then there is a false conflict. *Id.* (internal citations omitted). In the event that "no jurisdiction's interests would be impaired if its laws were not applied," an unprovided-for case results. *Id.*

Turning to the claim for punitive damages, the interested states are Pennsylvania and Maryland.  The defendant is a Pennsylvania corporation and its principal place of business is located in that state. The incident giving rise to the claim took place in Maryland, and the plaintiffs and the decedent are/were Maryland residents.  Pennsylvania law permits punitive

damages "for conduct that is outrageous, because of the defendant's evil motive or his reckless

indifference to the rights of others." *Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 121, 870

A.2d 766, 770 (2005) (internal citations and quotations omitted). In contrast, under Maryland

law, a court may not award punitive damages for a non-intentional tort "unless the plaintiff has

established that the defendant's conduct was characterized by evil motive, intent to injure, ill

will, or fraud, *i.e.,* 'actual malice.'" *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 460, 601 A.2d

633, 652 (1992).  Actual malice may be characterized as "the performance of an unlawful act,

intentionally or wantonly, without legal justification or excuse but with an evil or rancorous

motive influenced by hate; the purpose being to deliberately and wilfully [sic] injure the

plaintiff." *Drug Fair of Md., Inc. v. Smith*, 263 Md. 341, 352, 283 A.2d 392, 398 (1971).   In

deciding whether to apply Pennsylvania's "reckless indifference" standard or Maryland's "actual

malice" standard, the court must ascertain the general policies that underlie these competing

standards of care. *See Lacey*, 932 F.2d at 187-88.

   According to the Pennsylvania Supreme Court, the purpose of the Pennsylvania's

punitive damages law is "to punish a tortfeasor for outrageous conduct and to deter him or others

like him from similar conduct." *Hutchison*, 582 Pa. at 121-22 (citing *Kirkbride v. Lisbon

Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 803 (1989); Restatement (Second) of Torts § 908

(1)). Imposing damages to punish a civil defendant is appropriate "only where the conduct

complained of is especially egregious." *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 170, 494

A.2d 1088, 1096-97 (1985) (internal citations omitted) (*abrogated on other grounds by

Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (1989)). The Maryland Court of

Appeals has observed that "[a]warding punitive damages based upon the heinous nature of the

defendant's tortious conduct furthers the historical purposes of punitive damages-punishment and deterrence. *Owens-Illinois, Inc.*, 325 Md. at 454 (internal citations omitted).  Unlike Pennsylvania, the Maryland Court of Appeals has highlighted criticism of the concept of punitive damages in Maryland. *Id.* at 450. Maryland's highest court has noted the "proliferation" of such claims in tort cases and cited scholarly commentary that "'the increasing number and size of such awards may fairly raise concern for the future stability of American industry.'" *Id.* (internal citations omitted). In light of these concerns, the Maryland Court of Appeals explicitly rejected a "recklessness" standard for punitive damages claims, *Id.* at 460 (*overruling Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 297 A.2d 721 (1972)), observing that prior application of the lower standard "provided little guidance for individuals and companies to enable them to predict behavior that will either trigger or avoid punitive damages liability." *Id.* at 459. Thus, although the general purposes of the two states' laws are the same, Maryland's decision to adopt a heightened standard reflects a policy of restricting punitive damages awards in order to protect companies that conduct business in the state from excessive financial liability.[1]

In light of the policies underlying each state's punitive damages standard, the court concludes that a true conflict exists. Maryland's interest in restricting punitive damages awards to protect and promote industry in the state would be impaired by applying Pennsylvania's lower standard of care to the conduct of a corporation that operates within Maryland.  Although Vitran is not a Maryland corporation, the company has a terminal in Elkridge, Maryland and conducts business in the state regularly.  Conversely, applying Maryland's heightened standard for

---

[1] The purposes underlying various states' disallowance of punitive damages may also be instructive.  *See, e.g. In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 613 (7th Cir. 1981) ("The purpose underlying the disallowance of punitive damages is protection of defendants from excessive financial liability.").

punitive damages would impair Pennsylvania's interest in regulating its resident corporate

wrongdoers.  As the interests of both Maryland and Pennsylvania would be impaired if the other

jurisdiction's law were to apply, a true conflict exists. *See Budget Rent-A-Car Sys., Inc. v.*

*Chappell*, 407 F.3d at 170.

      Because there is a true conflict, this court must determine which state has the "'greater

interest in the application of its law.'" *Hammersmith*, 480 F.3d at 231 (citing *Cipolla v.*

*Shaposka*, 439 Pa. 563, 267 A.2d 854, 856 (1970)).  This analysis combines the approaches of

the Restatement (Second) of Conflict of Laws (contacts establishing significant relationships)

and "interests analysis," which entails a "qualitative appraisal of the relevant states' policies with

respect to the controversy." *Id.* (internal citations omitted). The court's inquiry requires more

than a "mere counting of contacts." *Cipolla*, 267 A.2d at 856.  Instead, the court should "weigh

the contacts on a qualitative scale according to their relation to the policies and interests

underlying the [particular] issue." *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 400 (3d Cir.

1987).

      The court must first assess each state's contacts under the Second Restatement of

Conflicts of Laws. *See Hammersmith*, 480 F.3d at 232. Section 145(2) lists the following

contacts that should be considered when determining which state has the most significant

relationship to the events and parties at issue in a tort claim: (a) the place where the injury

occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile,

residence, nationality, place of incorporation, and place of business of the parties; and (d) the

place where the relationship, if any, between the parties is centered. Restatement (Second) of

Conflicts of Law § 145(2), at 414 (1971).

In the present case, both the injury and the conduct that gave rise to the injury occurred in Maryland. In addition, all of the plaintiffs in the case are from Maryland, as was the decedent. On the other hand, Vitran was incorporated in Pennsylvania and has its principal place of business in that state. After weighing these contacts on a "qualitative scale" according to their relation to the policies underlying the punitive damages issue, however, Maryland has the most significant relationship to the punitive damages claim. Vitran's employee was operating the tractor-trailer in Maryland when it struck the decedent, implicating Maryland's strong interest in regulating vehicles that use its roadways. It is true that, because Vitran is a Pennsylvania motor carrier, Pennsylvania has an interest in regulating Vitran's conduct. Nonetheless, Vitran has a terminal in Maryland and regularly conducts business in the state, (ECF No. 21, Answer, at 2.) such that Maryland's regulatory interest is also significant. In fact, Vitran's driver had departed from its Maryland terminal immediately prior to the incident. *Id.* For these reasons, Maryland law must be applied to the punitive damages claim.

The current complaint does not appear to allege facts that would support a finding of actual malice. Further, a request for punitive damages does not constitute a separate count or claim. Accordingly, Count III will be dismissed without prejudice. Punitive damages may be sought at a later date if discovery reveals facts sufficient to meet the Maryland standard.

A separate Order follows.

<u>August 28, 2012</u>                                    _____/s/_____
Date                                                                 Catherine C. Blake
                                                                        United States District Judge